Good morning, and may it please the court. Based on the United States Supreme Court's decision in the Marinello case following the trial of this case, the government has correctly confessed that the instruction that the jury was given as to the sole count of conviction was error. Mr. Beckham, who is here on bond from this court, was acquitted of every count on which the jury was properly instructed. Because the jury in this case was not required to find Mr. Beckham guilty beyond a reasonable doubt of every element, every fact necessary for a conviction under Section 7212A, the sole count of conviction, we ask that this court reverse. What the Supreme Court did in the Marinello case is it found that a conviction for the criminal tax equivalent of the obstruction statute, 26 U.S.C. 7212 subsection A, requires proof not only of the elements that the jury was instructed it had to find beyond a reasonable doubt in this case, but of two additional elements. Number one, that Mr. Beckham was aware or that it was reasonably foreseeable of an ongoing IRS proceeding. And number two, that any corrupt act or any corrupt conduct done with that mens rea was done, there was a nexus, in other words, that's the language the Supreme Court used, between the corrupt act and the ongoing or foreseeable proceeding. I think the government's arguing that the special verdict form had some language that covered that. Two questions about that. One is did you object to, or you or whoever tried the case, object to the language of the special verdict form? Yes, Your Honor. We specifically objected to the special verdict form. It's in the transcript in volume six on page eight. And what we said there is that the verdict form that the government was proposing does not cure the issue at all. In the context of the instructions conference where we made that objection, what we were talking about was our request on behalf of the defense that the jury be properly instructed beyond a reasonable doubt that it had to find the two, what's now considered the Marinello elements. That's actually my question. Did you object on the basis that it didn't contain a reasonable doubt standard? Yes and no, Your Honor. Not expressly. In other words, there's nothing in the record that would does not contain a beyond a reasonable doubt standard. However, in the context of what we were requesting, I think that we did, Your Honor. And the reason why is because we proposed defense proposed instruction F, which would have required the jury to find the so-called Marinello elements beyond a reasonable doubt. And we objected to the government's, I'm sorry, to the court's refusal to instruct the jury as to the reasonable doubt language. So by saying that this doesn't cure the issue at all, which was the language that's in the transcript, I do believe that we objected. Furthermore, Your Honor, I don't think that that controls whether or not reversal is necessary in this case. The reason why is because as a practical matter, no panel of the Eighth Circuit has ever held that a special interrogatory not subject to the beyond a reasonable doubt standard can cure an erroneous jury instruction. That's never happened in the history of this court. Three circuits, the First, the Fifth, and the Tenth, have found that it's actually plain error, regardless of any lack of objection, to exclude the beyond a reasonable doubt language from any special interrogatory form. Let me ask you, aside from the reasonable doubt, the lack of reasonable doubt, did the special verdict interrogatory cover the Marinello issue? To an extent, Your Honor, but not completely. And what was insufficient? What the special verdict form did, Your Honor, is the special verdict form instructed the jury, if you find the defendant guilty, in other words, if you've already found the defendant guilty. Then you must answer the following questions. And the questions asked was, did the defendant commit at least one corrupt act after becoming aware of the existence of an internal revenue service audit or proceeding? And then it basically gave a list of 12 paragraphs, which were paragraphs of count one of the indictments, essentially the corrupt acts, quote unquote, as they're alleged. And then it asked the jury to find unanimously which one. There was never a question about the nexus. And the Supreme Court in Marinello expressly held that that's a fact that must be found beyond a reasonable doubt. Because that's a fact that must be found beyond a reasonable doubt, case law, going as far back as the Winship case before the United Supreme Court, clearly establishes that a criminal defendant has a due process right under the Fifth Amendment to have every fact necessary for a conviction to be found beyond a reasonable doubt by the jury. So in this particular case, the verdict form fails in two capacities. Number one, this was not found beyond a reasonable doubt. And we do think that that's significant. But number two, the jury was not even asked about the nexus requirement. The Fifth Circuit squarely addressed this exact issue in the Stanford case, which we cited in our brief. And it was obviously a different statute. But the issue in that case was whether a special interrogatory in a federal criminal case can essentially save, in other words, justify an affirmance of a criminal conviction when the special interrogatory was not subject to the beyond a reasonable doubt standard. The Fifth Circuit, interestingly enough, looked to this court's jurisprudence in the Dvorak case, which we cited in our brief as well. And what the Fifth Circuit did is expressly say, we cannot presume the jurors applied the correct standard of proof. In other words, that's not something that we speculate about or guess at. And a defendant is entitled to a jury determination that he's guilty of every element beyond a reasonable doubt. So absent an appropriate instruction, the Fifth Circuit correctly reversed that conviction and did so based in part, at least expressly addressing this court's precedent in the Dvorak case. There are two instances where the Eighth Circuit has addressed a similar situation, at least the only two that we could find and that were cited in the government's brief as well. It's Ryan and Dvorak. In both of those cases, the jury, the special interrogatory at issue that was used to basically affirm the convictions expressly included the beyond a reasonable doubt language within the interrogatory itself. And in Ryan, this court actually said, I'm reading verbatim, the jury considered and made findings as to each and every element of the statute that was at issue using the standard beyond a reasonable doubt. In other words, this court gave significance to the fact that the standard beyond a reasonable doubt language was used. That's not dicta, that's based on the Fifth Circuit requirement that a finding necessary for a count of conviction has to be found beyond a reasonable doubt. In Dvorak, this court did not address that issue expressly, but the interrogatory which is contained within the actual language of this court's published opinion expressly contains the beyond a reasonable doubt language within the interrogatory. In other words, it asked the jury, unlike the verdict form in this case, do you make this finding beyond a reasonable doubt? And we think as a matter of constitutional law, these are significant distinctions. In the trial itself in this case, the district court's instruction to the jury as to the significance of what the verdict form was, was this court's pattern jury instruction on that issue, where the district court told the jury, the verdict form is simply the written notice of the decision that you reach in this case. In other words, it is not a supplemental jury instruction. On the reasonable doubt question, hasn't the Supreme Court essentially said that we're to look to whether there's a reasonable likelihood that the jury understood that there was some standard less than reasonable doubt? And if that's correct, what about these instructions would have led a reasonable jury to think that it could have found, made the finding in the special verdict form on a standard less than reasonable doubt? Well, as a practical matter, your honor, the language of the verdict form coupled with the jury instructions, it's the exact same scenario as the Fifth Circuit dealt with in Stanford. In other words, the jury is told, here are specific things you have to find using the beyond a reasonable doubt standard. We had actually asked that the jury be correctly instructed as to find the so-called Maranello elements using the beyond a reasonable doubt standard. It's the government that objected. And so, as a practical matter, the jury was then told, similar if not identically to the case in the Fifth Circuit Stanford, if you find the defendant guilty, then we want you to answer these two questions without any direction at all. So the only way that this court could conclude that the jury applied the beyond a reasonable doubt standard to those special interrogatories is essentially to assume or to guess. And exactly as the Fifth Circuit explained in Stanford, absent an appropriate instruction, we would be presuming, this court would be presuming, that the jurors applied the correct standard of proof. So as a practical matter, there is a fairly significant leap that this court would have to make. Well, other circuits have done that, haven't they? I mean, maybe not the Fifth, but how about the First? Only in the context, your honor, of sentencing drug quantity issues, as far as I'm aware. In fact, the First Circuit, in a case... Does that matter? I believe it does, your honor, because it goes to the due process requirement that every fact necessary for a conviction be found beyond a reasonable doubt by a jury. The First Circuit, in Delgado-Morero, if I'm pronouncing that correctly, actually concluded it was plain error to omit reasonable doubt from a special interrogatory. And that's identical to the Fifth Circuit in Stanford and the Tenth Circuit in Johnson. And again, this court has never held otherwise. What the government is asking this court to do is to, for the first time ever in this court's history, to conclude that a special interrogatory not subject to the beyond a reasonable doubt standard somehow saves a conviction, as opposed to perhaps a sentencing issue. And this court has never even gone that far, as far as my research reveals. In other words, other circuits have, and I acknowledge that, but this court hasn't. What about the argument that the jury verdict was supported by overwhelming evidence, and so any error was harmless? I mean, even in plain error analysis, you get down to a harmless error can still survive. Well, we believe that, to the extent this court does not apply a de novo review, it would actually be harmless beyond a reasonable doubt. And with respect to the evidence at trial, these were hotly contested issues at the trial of this case for a couple different reasons. Number one, the jury actually acquitted Mr. Beckham of every count on which the jury was correctly instructed. And so to say that the evidence was overwhelming is really inconsistent with the verdict itself. Second of all, the government's argument as to this issue that they raise in the brief relies extensively on the testimony of John Horsman, who admitted significantly on cross-examination to making statements that were inconsistent with statements that he made on direct examination. Mr. Horsman's testimony, if it was believed, would very likely have led to a conviction on counts two, three, and four of the indictment which the jury acquitted Mr. Beckham on. And so as a practical matter, to argue that the evidence was overwhelming, I think, is very inconsistent with this hotly contested issue involving not only Horsman's testimony, but Revenue Officer Grinstead's testimony as well. If I may reserve the rest of my time for rebuttal, I appreciate it. Thank you. Thank you. Good morning. May it please the court, Greg Knapp for the United States. If I may, before turning to the special verdict form, I would like to discuss the other reason why the instructional error in this case was harmless, and that is the incontrovertible evidence that Mr. Beckham was in of an IRS audit. Marinello holds that there must be a nexus between the defendant's conduct and a particular administrative proceeding, such as an audit. And in this case, there was an audit. And moreover, Mr. Beckham eagerly and fraudulently participated in that audit. And as a result, Marinello has no practical effect on the outcome of this case, because unlike Marinello, the defendant in this case was not oblivious to an IRS investigation. On the contrary, Mr. Beckham's knowledge of and participation in the IRS audit were uncontested. And so it follows that this court can conclude, consistent with neither of the United States, that the failure to expressly instruct the jury on the pending proceeding requirement of Marinello was harmless error. Now, the defendant... Would harmless be sufficient, or does it have to be harmless beyond a reasonable doubt? Harmless beyond a reasonable doubt. I agree with that standard. Our argument is that it is harmless beyond a reasonable doubt, because with respect to Marinello's pending proceeding requirements, there was no plausible dispute. Mr. Beckham participated in the audit from day one of that audit as Mr. Horstman's representative. And so even if the jury had been properly instructed on Marinello's pending proceeding requirements, no rational jury would have failed to find that requirement. Now, in the brief... Isn't there more than just a pending proceeding requirement in Marinello? The whole thing is that there must be a nexus between the defense conduct and a particular administrative proceeding. That is correct. We are arguing that there is no plausible dispute as to that connection between the defendant's conduct and the IRS audit, because from day one of that audit, Mr. Beckham was participating as Mr. Horstman's representative. Now, the defense in their reply brief, and here again today during our argument, have attempted to point to a dispute based on credibility issues of John Horstman, based on an alleged hotly disputed issue that existed at trial. First of all, those assertions are not supported by any citation to the record in the reply brief. But more importantly, and second, that dispute to the extent it exists does not go to Marinello's pending proceeding requirements. Rather, if anything, that goes to the defendant's criminal intent, whether he knew that he was trying to gain an unlawful advantage vis-a-vis the IRE by, for example, excuse me, vis-a-vis the IRS. If you tried this case again, you'd follow the same procedure. You'd object to the reasonable doubt requirement? No. No, we would not. Well, then why did you object the first time? We did not object to a reasonable doubt requirement per se. We objected to the proposed instruction by the defense, which I should add was not itself completely correct with respect to the subsequent decision in Marinello of the United States. The proposed defense instruction merely would have directed the jury to some of the allegations in the indictment, but not others. Rather, only those allegations that occurred after the audit commenced. But the holding of Marinello is that the government must show a nexus between the defendant's conduct and a particular administrative proceeding. That is the type of language that going forward should- Beyond a reasonable doubt. Correct. Correct. Why shouldn't we follow the special verdict form, that is? Why should we not follow- Why should we not say that there was a requirement of the reasonable doubt instruction as to each of the points raised in the special verdict form? Well, first, because as I have begun my argument here today, the court would not even need to rely on the special verdict form to affirm. But putting that aside, there are distinctions- Reasonable doubt isn't required because the evidence is so strong. Why are we even here? No. What we are arguing with respect to our first argument is that had the jury properly been instructed that they needed to find, beyond a reasonable doubt, that there was a nexus between the defendant's conduct and a particular administrative proceeding, there is no rational doubt that the jury would have made that finding. Because as I said in my introduction, Mr. Beckham was in the thicket of the IRS audit. This is not like Marinello, where the defendant was oblivious to an IRS investigation. Here, the connection between the defendant's conduct and the IRS administrative proceeding could not reasonably be disputed. Perhaps the defense could dispute criminal intent. Perhaps they could dispute other elements. But with respect to the element that was erroneously charged on appeal, the pending proceeding requirement, there could be no rational dispute. Now, to answer your question about the Fifth Circuit case, that goes more to the special verdict form. There are critical distinctions between this case and the Fifth Circuit case. In those cases, cases like Stanford, cases like Delgado-Morero, there was a high degree of separation between the question of guilt or innocence and the subsequent special interrogatory on the omitted element. In particular, in Stanford, the Fifth Circuit case, on which my colleague relies, the district court had singled out the special interrogatory and instructed the jury that this special interrogatory is separate and apart from the finding of guilt and is just for my case side by the defense, the separation was even more extreme in that the jury was not even asked to make a special finding on drug quantity until after they had completed their deliberations and were told that they were about to go home. Now, in this case, there was no such separation. The special interrogatories on the pending proceeding requirements appeared immediately after the finding of guilt or innocence. And that is apparent if the court wishes to look at the special verdict form. It's reproduced in the addendum to the blue brief. It's very apparent that these special interrogatories on the special verdict form were placed on equal footing with the findings of guilt or innocence. And that is a critical distinction between this case and the cases relied on by the defense. As a result, this case is more like Paz-Alvarez, the First Circuit case side in the government's brief, in which the First Circuit found no error, not just no plain error, but no error whatsoever in the failure to reiterate reasonable doubt language on the special verdict. There is no reason to believe that the jury applied any lesser standard. So here, too, there is no reason to believe that the jury applied any standard other than the reasonable doubt standard on which they were exclusively instructed. All right, so back to your first argument, the harmless beyond a reasonable doubt evidence. Yeah. We would have to find harmless beyond a reasonable doubt that there was evidence of awareness of the proceeding and the nexus. Correct. I think Mr. Gelfand suggested, well, that requires relying, I think he might have said solely on Horstman. What is the evidence that's so overwhelming on those two points? The evidence was, first, that when the audit began in November 2011, Mr. Beckham submitted a series of false power attorney forms to the IRS auditor, falsely representing that he was a licensed CPA authorized to represent Mr. Horstman. And he subsequently submitted similar forms to the next IRS auditor who took over the case in March 2012. The falsity of those forms was not disputed. It was stipulated at trial. Second, with both IRS auditors... I don't even think they'd have to be false. That shows an awareness. Correct. Exactly. Whether they were false or not, that would be more relevant to criminal intent, but there still can be no rational dispute that there's a nexus between the defendant's conduct and the particular administrative proceeding. But that's not all. Then after... That tells me of a proceeding. How about the nexus element? Because the defendant is interacting directly with the IRS auditor and through those actions attempting to influence the course of the audit. Whether fraudulently or not, the parties could dispute whether he acted with fraudulent intent or not. But that dispute is not relevant to the nexus between the defendant's conduct and the IRS proceeding. And then second, throughout the IRS audit, Mr. Beckham dealt directly with the IRS auditors, exchanged documents, made representations about Mr. Horsman's work for Arbor Homes. Of course, as part of that, there was a submission of the false day planner calendar. No one disputes that that day planner calendar was false. At most, the defense disputes who falsified it. But again, that would be an issue as to criminal intent. It would not create any reasonable doubt as to the existence of a connection between the defendant's conduct and the IRS proceeding. We also cite in our brief an instance where Mr. Beckham submitted to the IRS auditor a false letter under the signature of Greg Solmarhoff, indicating that Mr. Solmarhoff was thanking Mr. Horsman for all his great work for Arbor Homes. Again, a letter that was undisputably false. Another fact that is not discussed in the briefs, but is interesting, is that at one point, Mr. Beckham tried to convince Revenue Agent Shake not to issue a summons to Arbor Homes Incorporated, seeking documentation that might substantiate the fund transfers that Mr. Beckham represented were occurring as part of these transactions. All of these day-to-day actions, all of these direct communications with the IRS auditors leave no reasonable doubt that there is a connection between the defendant's conduct and the IRS audits. There simply... This case had been stayed pending a decision to Marinello. Would the instructions have been different? Probably. We agree that going forward, the instructions should be different and should be consistent with Marinello. But that's why there's an error in this case. We acknowledge that. The question for this court is, has the government demonstrated... What did you acknowledge? We acknowledge in this case that the instructions were... I was wondering, why did you delay the object to staying the decision till after... The trial till after Marinello came? Well, because there was no telling what Marinello would decide or when they would decide it. And because... You anticipated the decision. Well, the government had its own view, of course. Otherwise, you wouldn't have had the special verdict for him. Correct. Correct. You were talking about effective flanks. You were talking about effective flanks or certain parts of the case. Correct. And that's the second part of why the government did not agree to the stay, because as the district court recognized, the special verdict form could cure any error that might arise from the Marinello decision. Had you included the reasonable doubt beyond question, you'd be home free, but I don't know that you are today. What was that? Let's see. I thought I had brought a copy of that first circuit case, the one you cited. We cited Paz-Alvarez, the first circuit case. And again, just at the risk of repeating myself, that was a case where the court found no error in the failure to reiterate reasonable doubt language on the form itself, given the fact that the form was, excuse me, that the special interrogatories on the omitted elements appeared on the same verdict form. The district court delivered those interrogatories and placed them on the same footing as the finding of guilt or innocence. And so there was no reason to believe that the jury applied any lesser standard. Earlier, with respect to these other circuit precedents, there was a suggestion that the fact that the first circuit case that I cited involved a drug quantity finding should somehow reduce its persuasive weight. I disagree with that assertion because in those cases, drug quantity was also a finding that the jury was required to find beyond a reasonable doubt in order to trigger a more severe penalty. That is a classic Apprendi error, where the Supreme Court instructs that the jury has to make this finding beyond a reasonable doubt. And so that type of error is on all fours with the type of error that occurred here. And so there is no reason to downplay the precedential weight of that decision. Are there any other questions I can address for the court? You argued, if we don't buy your first argument and we look at your second argument on the special verdict form, you argue that we should look at the under plain error. Correct. What about the idea, though, that they submitted a jury instruction that included a plain error, a reasonable doubt standard on these two questions? Well, first of all, the proposed instruction, as I tried to indicate earlier, did not directly address the two issues that the defense is raising here today. And that makes sense because at that point, Maranello wasn't decided. And so it wasn't as though the proposed instruction included reasonable doubt language tied to the requirement that there be a nexus between the conduct and the particular administrative proceeding. It was styled much differently. Second, the defense had every opportunity to object to the particular language of the reasonable doubt, the particular language of the special verdict form. More than a month before trial, the district court indicated that it would use a special form that was used. Because the specific form that ultimately was used was the same form that the government proposed along with its proposed jury instructions. And so in the briefing, the defense makes much of the fact of how throughout the proceedings they raised the Maranello issue. Fine. I can agree with that. But that only illustrates that they had multiple opportunities to also object to the reasonable doubt language and make this court's job potentially much easier. There was also significant post-trial briefing on the Rule 29 motion for a judgment of acquittal, and there too, there was no suggestion that the verdict form was erroneous and that it failed to expressly carry over the reasonable doubt language. And so under these circumstances, we believe that the application of plain error review is appropriate. I will also say that in the first instance, we argue that even under de novo review, the error would still not be reversible error a la Paz-Olivares, which I cited earlier. Because in that case, the First Circuit concluded that under any standard of review, there would be no reversible error. And that's a correction I would like to make. I believe I've already made the point, but I would like to reemphasize it because in the reply brief, there is an assertion that Paz-Olivares was a plain error case. In fact, it was a de novo case. The First Circuit said that under any standard of review, there would be no reversible error error. So whichever standard this court ultimately chooses to apply, I don't think it matters. Thank you for your time. How often have we said that in our cases that instructional error under de novo review is harmless? There has not been a criminal tax case analogous to this. However, there have been cases in which this court has applied a Nader v. United States type analysis to conclude that instructional error was harmless. There is the Inman case cited in the government's brief in which there was a failure to expressly instruct on, I believe, an interstate commerce element. But because there was no reasonable dispute as to the existence of that element, there was no reversible error. And if I may just finish the answer to Your Honor's question, another case is United States v. Fiorito. That's not cited in the brief, but it's 640 Fed 3338 in 2011 decision from the circuit in which the court also found harmless error from an instructional error which had to deal with an element of mail fraud that the scheme contemplated the use of the mails. Although the jury instructions arguably failed to include that element, it was not reasonably in dispute, and so it was harmless error. And so to answer your question, yes, this court has applied this type of analysis before, just not specifically in the context of Section 7212 of the Revenue Code. Very well. Thank you. Mr. Galfin, rebuttal. Thank you, Your Honor. If the evidence was so overwhelming as to the so-called Maranello elements, the government Can it possibly be disputed that he was aware of the IRS proceeding? There is no dispute, Your Honor, that Mr. Beckham was aware of the proceeding. The question is whether the conduct that the jury was asked to find beyond a reasonable doubt, the so-called corrupt acts, had a nexus to the proceeding. And the reason why that's in huge dispute and was in trial is Revenue Officer Grinstead's testimony. The jury on the special verdict form checked one box, checked one of the 12 options, and that was involving the alleged delivery of a day planner that Mr. Horstman himself admitted under cross-examination was in his own handwriting and contained a variety of dates that only he could have known he was available. In other words, what he said on direct examination was implausible at best, and the jury clearly rejected it. There was a lot of questions of Mr. Grinstead in an issue at trial about whether Mr. Beckham even committed this act in the first place. The whole point here is that we wanted the jury to be properly instructed. Is there any dispute that the day planner was submitted by your client to the IRS? Yes, Your Honor. Absolutely. And the record reflects that Mr. Grinstead, for example, kept referring to his memory. He kept referring to his notes in his so-called diary where he attributed it to our client. But there was a dispute at trial about whether Mr. Horstman himself provided that to the IRS as opposed to Mr. Beckham, which is the ballgame when it comes to that issue. Actually provided it or wrote the entries on it? Both, Your Honor. There was no—Mr. Horstman admitted he wrote the entries, and if I may complete my answer, Mr. Horstman admitted under cross-examination, under oath, that he wrote the entries. That was a little inconsistent with what he said on direct examination, but he admitted it. There was dispute over what Mr. Beckham's role, if any, was in providing this to the IRS and knowing what was in it, which does deal with whether it's a corrupt act. The whole point here, Your Honor, that we ask is that, just like in Stanford, let the jury decide this issue with a proper instruction instead of having an appellate court essentially go through the transcript and make factual credibility determinations about who to believe and who not to believe. That's why we asked for a jury instruction in the first place, and we're asking this court to follow Stanford. Very well. Thank you, Your Honor. Thank you, Mr. Gelsman. The court appreciates your arguments today and briefing. Case will be submitted and decided in due course.